IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TORCH E&P CO. and VELASCO GAS CO., LTD, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-06-1786 |
| J.M. HUBER CORP., | § § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court are plaintiffs' Original Complaint to Vacate Arbitration Award (Docket Entry No. 1) and defendant's Motion to Confirm Arbitration Award (Docket Entry No. 20). For the reasons stated below, the arbitration award at issue will be confirmed.

## I.  Background

On August 17, 2000, plaintiffs, Torch E&P Company and Velasco Gas Company, Ltd, entered into an agreement, effective as of July 1, 2000, with defendant, J.M. Huber Corporation, in which plaintiffs sold to defendant certain producing mineral properties ("the properties") in Wyoming.[1]  Paragraph 12.1 of the agreement set forth the method for prorating the tax liabilities on the properties.

---

[1]Original Complaint to Vacate Arbitration Award, Docket Entry No. 1, p. 2.

Tax Prorations.  Real and personal property taxes
for the Properties shall be prorated between the
Buyer and Seller as of the Effective Date.  If the
actual taxes are not known on the Closing Date,
Seller's share of such taxes shall be determined by
using (a) the rates and millage for the year prior
to the year in which the Closing occurs, with
appropriate adjustments for any known and verifiable
changes thereto, and (b) the assessed values for the
year in which Closing occurs.  When Buyer receives
the actual tax statements for the Properties from
the appropriate taxing authorities, Buyer shall
deliver to Seller a copy of such statements,
together with the amount, if any, by which Seller's
proration exceeds the proration that would have been
made had actual tax statements been used to
calculate Seller's proration.  If the proration for
Seller that would have been made using actual tax
statements exceeds that made at Closing, Seller
shall pay to Buyer such difference within three
Business Days of receipt of such statement.[2]

The agreement contains a clause requiring arbitration of any

"action, dispute, claim or controversy of any kind now existing or

hereafter arising between any of the parties . . . in any way

arising out of, pertaining to or in connection with this

Agreement."[3]  The agreement makes Colorado law controlling and

gives an arbitrator the power to "impose sanctions and to take such

other actions as the arbitrators deem necessary to the same extent

a judge could impose sanctions or take such other actions pursuant

to the Federal Rules of Civil Procedure and applicable law."[4]

---

[2]Id. at Exhibit A1, Agreement for Purchase and Sale,
pp. 13-14 ¶ 12.1.

[3]Id. at 33 ¶ 28.1.

[4]Id. at 32 ¶ 28.4.

In 2004 defendant conducted an internal audit and concluded that it had overpaid its share of taxes on the properties.[5]   In 2005, pursuant to the agreement's arbitration clauses, defendant filed a demand for arbitration with the American Arbitration Association.

The arbitration hearing was conducted by an arbitrator selected by the parties.[6]   Prior to the hearing plaintiffs filed a motion for summary disposition of the case, citing Section 14.5 of the agreement, which stated, in part:

> 14.5.2.  None of the Buyer Indemnified Parties shall be entitled to assert any right to indemnification hereunder or to otherwise seek any damages or other remedies for or in connection with . . . (c) any liabilities otherwise arising in connection with or with respect to the transaction contemplated in this Agreement until the aggregate amount of the Liabilities for such misrepresentation and breaches actually suffered by Buyer with respect to Seller exceeds in the aggregate three percent (3%) of the Adjusted Purchase Price, and then only to the extent of such excess.[7]

> 14.5.3. After the Closing, any assertion by any Buyer Indemnified Party that Seller is liable . . . (c) for indemnity under the terms of this Agreement, or (d) otherwise in connection with the transactions contemplated in this Agreement, must be made by Buyer in writing and must be given to each Seller on or prior to the last preceding Business Day before the first anniversary of the Closing Date. . . .[8]

_____

[5]Original Complaint to Vacate Arbitration Award, Docket Entry No. 1, pp. 5-6.

[6]Id. at 2-3.

[7]Id. at Exhibit A1, Agreement for Purchase and Sale, p. 17 ¶ 14.5.2.

[8]Id. ¶ 14.5.3.

. . .

>14.5.6.  The sole and exclusive remedy of each of
>the [Buyer and Seller] with respect to the purchase
>and sale of the Properties shall be pursuant to the
>express indemnification provisions of this Section
>14.  Any and all (a) claims relating to the . . .
>covenants and agreements contained in this
>Agreement, (b) other claims pursuant to or in
>connection with this agreement, or (c) other claims
>relating to the Properties and the purchase and sale
>thereof shall be subject to the provisions set forth
>in this Section 14. . . .[9]

Plaintiffs argued that Section 14.5 precluded recovery by defendant because the amount sought did not exceed three percent of the purchase price and because the complaint was filed after the date contemplated in Section 14.5.3.[10] The arbitrator denied plaintiffs' motion for summary disposition, finding that the agreement to prorate taxes in Section 12.1 "was not limited by nor affected by the 'basket' liability of Section 14.5.2 nor the time limits imposed by Section 14.5.3."[11] According to the arbitrator, Section 14.5.3 could not have been intended to apply to the sharing of taxes "since the parties could not have known, within the time constraints of said section, what the taxes to be shared would have

---

[9]Id. at 18 ¶ 14.5.6.

[10]Original Complaint to Vacate Arbitration Award, Docket Entry No. 1, Exhibit A, Respondents' Motion for Summary Disposition, p. 3.

[11]Original Complaint to Vacate Arbitration Award, Docket Entry No. 1, Exhibit B, Order, p. 1 ¶ 4.

-4-

been."[12]  The arbitrator concluded that Section 14.5.2 did not limit

defendant's claim because

> [h]ad it been so intended, cross references or
> section citations would have been easy to insert.
> Neither did the parties so contemplate.  The parties
> dealt separately with the tax liabilities, not in
> accordance with the Purchase Agreement and agreed to
> split the tax liabilities as each envisioned fair
> and reasonable.  Only when a dispute arose did the
> parties attempt to invoke Section 14.5.2 or Section
> 14.5.3.  Whether or not each party's action in this
> regard is significant is a factual question, not yet
> resolved.[13]

After denying plaintiffs' motion for reconsideration,[14] a

hearing was held and the arbitrator subsequently awarded defendant

$471,972.12, including prejudgment interest and attorney's fees.[15]

In his Final Award the arbitrator concluded that the agreement was

not ambiguous[16] and that

> [t]he provisions in Section 14 of the
> Agreement . . . prohibiting claims which do not
> exceed such amounts simply do not apply to the
> agreement of the parties to share ad valorem
> taxes . . . .  Neither the language of the Agreement
> nor the conduct of the parties can be construed so
> to provide.  Furthermore, [plaintiffs'] argument
> that the provisions of Section 14.5.3 compel a
> conclusion that [defendant's] demand was made beyond
> the period therein provided, when analyzed, makes no

---

[12]Id. ¶ 5.

[13]Id. at 2 ¶ 7.

[14]Original Complaint to Vacate Arbitration Award, Docket
Entry No. 1, Exhibit C, Torch E&P Company and Velasco gas
Company, LTD's Motion to Reconsider Summary Disposition and Trial
Brief.

[15]Original Complaint to Vacate Arbitration Award, Docket
Entry No. 1, Exhibit D, Final Award, p. 5.

[16]Id. at 2.

sense.   Inasmuch as Wyoming assesses ad valorem
taxes in the year following the production, it would
have been impossible for such section to have been
employed. . . .  Further proof of the intention of
the parties regarding adjustment of ad valorem taxes
and the fact that neither party considered the
limitations of Section 14 to apply to the tax
adjustments is the fact that, at a time beyond the
limitations imposed by Section 14.5.3 of the
Agreement, [plaintiffs] forwarded a final settlement
statement and county tax bills to [defendant]
covering periods during which [plaintiffs] owned the
properties and [defendant] paid the taxes, albeit
such taxes were ultimately determined to have been
owed by [plaintiffs].  It is therefore clear that
the parties did not intend that the limitations of
Section 14 applied to ad valorem taxes,
[plaintiffs'] actions in this regard were
inconsistent with such an intention.  The parties'
actions in this regard were consistent with the
Arbitrator's conclusions regarding interpretation of
the language of the Agreement.[17]

Plaintiffs brought this action seeking to vacate the
arbitrator's Final Award on the grounds that the arbitrator
exceeded his power and manifestly disregarded clearly applicable
legal principles that required dismissal of defendant's claims.[18]

## II.   <u>Legal Standard</u>

A court's review of an arbitration award is deferential, and
the award can be vacated only on "very narrow grounds."  <u>Brabham v.</u>

_____

[17]<u>Id.</u> at 3.

[18]Original Complaint to Vacate Arbitration Award, Docket
Entry No. 1, p. 4.  Plaintiffs also indicate that they believe
the award should be vacated because the arbitrator was partial or
corrupt, and because the arbitrator refused to hear evidence
pertinent and material to the controversy.  <u>Id.</u>  However,
plaintiffs' motion does not discuss any facts to support these
allegations.  As the proponents of vacatur, plaintiffs have the
burden of proof on these issues and have failed to meet this
burden.

A.G. Edwards & Sons, Inc., 376 F.3d 377, 380 (5th Cir. 2004).  The
Federal Arbitration Act, 9 U.S.C. § 10(a), sets forth the four
statutory bases for vacating an arbitration award:

>    (1)  where the award was procured by corruption,
>    fraud, or undue means;
>
>    (2)  where there was evident partiality or
>    corruption in the arbitrators, or either of them;
>
>    (3)  where the arbitrators were guilty of misconduct
>    in refusing to postpone the hearing, upon sufficient
>    cause shown, or in refusing to hear evidence
>    pertinent and material to the controversy; . . .; or
>
>    (4)  where the arbitrators exceeded their powers
>    . . .

In addition, the Fifth Circuit recognizes a nonstatutory basis for
vacating an arbitration award where the award is in manifest
disregard of the law and resulted in "significant injustice."[19]
Kergosien v. Ocean Energy, Inc., 390 F.3d 346, 353, 355 (5th Cir.
2004).  An award may not be vacated on the ground that it is
arbitrary and capricious.  Brabham, 376 F.3d at 385.

## III.  Analysis

**A.  Did the Arbitrator Exceed His Power?**

Plaintiffs first argue that the arbitrator's award was beyond
his power because he refused to employ the limitations of Section
14 of the Agreement.[20]  This refusal, plaintiffs claim, was contrary

---

[19]Another nonstatutory basis for vacatur is where the award
is contrary to public policy.  Kergosien, 390 F.3d at 353.
Plaintiffs do not challenge the award on this basis.

[20]Original Complaint to Vacate Arbitration Award, Docket
Entry No. 1, p. 8.

to the express contractual provisions and therefore should not be respected.[21]  The court disagrees.

Essentially, plaintiffs argue that the award is contrary to the plain meaning of the Section 14 limitations.[22]  However, in interpreting the agreement the arbitrator expressly concluded that Section 14 did not limit defendant's claim.  Although the court might not have reached the same conclusion regarding Section 14's applicability, this is not the test.

> Respondent's major argument seems to be that by applying correct principles of law to the interpretation of the [Agreement] it can be determined that the agreement did not so provide, that therefore the arbitrator's decision was not based upon the contract.  The acceptance of this view would require courts even under the standard arbitration clause to review the merits of every construction of the contract. . . . The question of interpretation of the [Agreement] is a question for the arbitrator.  *It is the arbitrator's construction which was bargained for*; and so far as the arbitrator's decision concerns the construction of the contract, the courts have no business overruling him because their interpretation of the contract is different than his.

Kergosien, 390 F.3d at 353 (quoting United Steelworkers of America v. Enterprise Wheel & Car Corp., 80 S. Ct. 1358, 1360 (1960)) (emphasis in original).  "[T]he single question is whether the award, however arrived at, is rationally inferable from the

---

[21]Id.

[22]Plaintiffs do not suggest that the arbitrator exceeded his authority by deciding issues that were not submitted to arbitration.

-8-

contract." <u>Kergosien</u>, 390 F.3d at 353–54.  Section 12.1 of the agreement contemplated prorating property taxes after the closing date.  As noted by the arbitrator, the time limitation of Section 14.5.3 would have been impossible to comply with, given the fact that the actual taxes would not be known within that time period. The arbitrator also concluded that the language of the agreement did not support a finding that Section 14.5.2's "basket" limitation applied to the proration of taxes, and that this interpretation was further supported by the parties' actions in connection with the agreement.  The award for prorated ad valorem taxes is therefore rationally inferable from the agreement.

The cases cited by plaintiffs are distinguishable from the facts in this case.  In those cases courts held that the arbitrator exceeded his power where the award was directly contrary to the express terms of the agreements.  <u>See, e.g.</u>, <u>Container Prod., Inc. v. United Steelworkers of America et al.</u>, 873 F.2d 818 (5th Cir. 1989); <u>Delta Queen Steamboat Co. v. District 2 Marine Engineers and Beneficial Ass'n</u>, 889 F.2d 559 (5th Cir. 1989); <u>Houston Lighting & Power Co. v. International Brotherhood of Elec. Workers</u>, 71 F.3d 179 (5th Cir. 1995); <u>Bruce Hardwood Floors v. UBC, Southern Council of Industrial Workers</u>, 103 F.3d 449 (5th Cir. 1997).  Here, by contrast, the arbitrator acknowledged Section 14 but concluded, as his authority under the agreement permitted him to do, that it did not apply under the facts of this case.

Because the arbitrator was interpreting the agreement in determining that Section 14 did not limit defendant's claim, the court concludes that the arbitrator did not exceed his power and, therefore, that the award cannot be vacated on this ground.

**B.    Did the Arbitrator Manifestly Disregard the Law?**

A nonstatutory basis for vacatur may arise if the arbitrator's award was in manifest disregard of the law.  The Fifth Circuit has held this to mean

> more than error or misunderstanding with respect to the law.  The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator.  Moreover, the term "disregard" implies that the arbitrator appreciates the existence of a clearly governing principle but decides to ignore or pay no attention to it.  Even if the arbitrator did manifestly disregard the law, a second step of the manifest disregard analysis requires that before an arbitrator's award can be vacated, the court must find that the award resulted in a "significant injustice."

<u>Kergosien</u>, 390 F.3d at 355 (internal quotations omitted).

Plaintiffs argue that clearly governing principles of law[23] were made known to the arbitrator, which he disregarded, thereby

---

[23]Plaintiffs allege the following principles were disregarded by the arbitrator:  Clear and unambiguous terms of a contract must be given effect; every provision of a contract must be given effect and conflicts avoided, if possible; courts do not have the power to rewrite or restructure the parties' agreement; contractual condi-tions precedent are enforceable; contracting parties have the right to impose shorter limitations periods on contract claims as long as such terms do not violate statutory prohibitions or public policy; contracting parties have the right to limit contract damage claims by aggregate "basket" limitations; contracting parties are charged with knowledge of applicable law.  Original Complaint to Vacate Arbitration Award, Docket Entry No. 1, p. 12.

meeting the first prong of the test.[24]  As for the second prong, plaintiffs argue that an award contrary to plaintiffs' view of the meaning of the Section 14 limitations is itself a significant injustice.   Plaintiffs also point to defendant's "inequitable conduct" in failing to provide evidentiary support at the hearings, waiting four years to serve notice of its claim, changing its arguments during the proceeding, and the fact that the claim was contrary to the liability limitations in the agreement.[25] Plaintiffs allege that "[a] significant injustice has been imposed on a party who negotiated liability limitations in good faith and had the reasonable expectation that they would be enforced, who is now required to pay a sum of money which it does not owe, to a party who sues on the agreement but seeks to have controlling provisions ignored."[26]

The court is not persuaded that the arbitrator manifestly disregarded the law.  The "legal principles" cited by plaintiffs are canons of contract interpretation, not laws dictating a contrary result.  Presumably, the arbitrator used these canons of interpretation in making his determination that Section 14 of the agreement did not limit defendant's claims.  <u>Cf.</u> <u>Ryan Energy Tech.</u>

_____

[24]Original Complaint to Vacate Arbitration Award, Docket Entry No. 1, pp. 12-13.

[25]<u>Id.</u> at 15.

[26]<u>Id.</u> at 16.

et al. v. CDG-MWD GP, LLC et al., 2006 WL 213916 (S.D. Tex. 2006)
(holding that an arbitrator manifestly disregarded the law where an
arbitrator awarded attorney's fees despite there being no award of
actual damages, and recovery of actual damages was a prerequisite
to recovery of attorney's fees under Texas law).   Again, although
the court might not have come to the same conclusion, "[w]hen an
arbitrator resolves disputes regarding the application of a
contract, and no dishonesty is alleged, the arbitrator's
improvident, even silly, fact-finding does not provide a basis for
a reviewing court to refuse to enforce the award."  Kergosien, 390
F.3d at 358 (internal quotations omitted).

       Nor have plaintiffs persuaded the court that they suffered a
"substantial injustice" as a result of the award.   In determining
whether a significant injustice has occurred, the court considers
"all the circumstances of the case, including powers of arbitrators
to judge norms appropriate to the relations between the parties."
Bridas S.A.P.I.C. v. Gov't of Turkmenistan, 345 F.3d 347, 363 (5th
Cir. 2003), cert. denied, 124 S. Ct. 1660 (2004).   Even if the
arbitrator had manifestly disregarded the law, such error alone
does not constitute a "substantial injustice."   If this argument
were accepted it would obviate the need for the test's second prong
altogether.   Plaintiffs do not argue that the award was contrary to
Section 12.1's provision for prorating taxes, only that Section 14
precluded defendant's claim altogether.   The award orders

plaintiffs to pay amounts they otherwise agreed to pay.  Cf. One Beacon America Ins. Co. v. Turner, 2006 WL 547959 (S.D. Tex. 2006) (holding no substantial injustice existed where an insurer was ordered to pay close to its policy limits after it had ignored its own expert's opinion by offering the insured significantly less money).  The court therefore concludes that the plaintiffs have not met their burden with regard to this nonstatutory basis for vacatur.[27]

### IV.  Conclusion

For the reasons stated above, the court concludes that confirmation of the arbitration award is warranted.  Defendant's Motion to Confirm the Arbitration Award (Docket Entry No. 20) is therefore **GRANTED**, and plaintiffs' complaint will be dismissed.

**SIGNED** at Houston, Texas, this 20th day of December, 2006.

_____
                        SIM LAKE
        UNITED STATES DISTRICT JUDGE

---

[27]Moreover, the facts stated by plaintiffs do not constitute "inequitable conduct" by the defendant.  There was nothing unreasonable about the way the claim was brought, nor is a party bound to assert the same arguments throughout an arbitration proceeding.

-13-